# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8051 | **DATE** | 4/30/2002 |
| **CASE TITLE** | Pavel Kossov vs. Brian Perryman et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Report and Recommendation submitted to Chief Judge Aspen. It is recommended that Plaintiff's petition for attorney fees and costs [#4] be denied. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | *2* | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 01 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 4/30/2002 | |
| FT/*secy* | courtroom deputy's initials | U.S. DISTRICT COURT | date mailed notice | 10 |
| | | 02 APR 30 PM 3:49 | FT | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAVEL KOSSOV,                          )
                                       )
        Plaintiff,                     )      No. 01 C 8051
                                       )
        v.                             )
                                       )      Judge Marvin E. Aspen
BRIAN PERRYMAN, District               )
Director, Immigration &                )
Naturalization Service and             )
TERRENCE E. WAY, Director              )      Magistrate Judge
of the Nebraska Service                )      Arlander Keys
Center, Immigration &                  )
Naturalization Service                 )
                                       )
Defendants.                            )

DOCKETED
MAY 1 2002

TO:   THE HONORABLE MARVIN E. ASPEN
      UNITED STATES DISTRICT COURT JUDGE

### REPORT AND RECOMMENDATION

The Plaintiff, Pavel Kossov, moves this Court to award him

$2,074.86 in attorney fees and costs pursuant to the Equal Access

to Justice Act ("EAJA"), 28 U.S.C.§ 2412(d)(1)(A)(West 2001).

Because Mr. Kossov was not a prevailing party in this action, and

for the reasons set forth below, the Court recommends that

Plaintiff's Petition be Denied.

### BACKGROUND

The Plaintiff, Pavel Kossov, came from Latvia to the United

States on a six month visitor visa in February 1991.  Mr. Kossov

did not leave the United States after six months and, as a

result, the Immigration and Naturalization Service ("INS")

initiated proceedings against him in 1993 for overstaying his

10

visa. During the ensuing proceedings, Mr. Kossov and his wife participated in the 1998 Diversity Immigrant Visa lottery. That same year, Mrs. Kossov was selected in the lottery, allowing her to file an application to adjust her status to that of a lawful permanent resident. By reason of his wife's inclusion in the 1998 lottery, Mr. Kossov was also able to apply to adjust his status to that of a lawful permanent resident. Both applications were granted by an Immigration Judge on September 16, 1998, which meant that the Kossovs were lawful permanent residents as of that day.

Although the Kossovs became lawful permanent residents as of September 16, 1998, the INS had to process the Kossovs' applications before the Kossovs would be issued their respective "green cards" or I-551 cards. A green card is proof of legal residency which, among other benefits, permits an alien to obtain a legal social security number, proves authorization to work in the United States, and allows an alien to obtain a driver's license.

The Kossovs completed the necessary paperwork for their green card applications with the Chicago INS office on September 30, 1998. Mrs. Kossov received her green card shortly thereafter, but Mr. Kossov's card did not arrive and the INS provided no reason for its delay.

According to Mr. Kossov, he and his wife made numerous inquiries to the INS in an effort to obtain his green card. Finally, the relevant INS service center notified Mr. Kossov that it did not have his file. This meant that either his file had never been sent from the Chicago INS office for processing, or that it had been lost. Regardless of the reason, the result was the same; Mr. Kossov's green card was not forthcoming. Mr. Kossov claims that he continued to follow up with the Chicago office, to no avail.

On October 19, 2001, Mr. Kossov filed a Petition for Writ of Mandamus in the United States District Court, Northern District of Illinois, to compel the INS to issue his green card. A status hearing for the case was set for December 14, 2001. Approximately one week prior to the hearing, on December 6, 2001, Mr. Kossov received his green card. Because Mr. Kossov's claim was satisfied, Judge Aspen dismissed the case as moot at the status hearing.

On December 18, 2001, Mr. Kossov filed an EAJA fee application, seeking $2,074.86 in fees for professional services rendered by his attorney, Mary L. Sfasciotti, and for costs associated with litigating this lawsuit. The Director has challenged Mr. Kossov's entitlement to fees and costs, arguing that Mr. Kossov is not a "prevailing party" and that the government's position was "substantially justified."

3

## DISCUSSION

### A. Standard for Awarding Fees Under the EAJA

The EAJA requires lower courts to "award to a *prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States . . ., unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust."   28 U.S.C. § 2412(d)(1)(A) (West 2001)(emphasis added).

The Court must first determine whether Mr. Kossov is a "prevailing party" for purposes of the EAJA, and, if so, whether the INS' failure to issue the green card for more than three years was substantially justified.  Because the Court finds that Mr. Kossov is not a prevailing party for purposes of the EAJA, it need not determine whether INS' conduct was substantially justified.

### B. Analysis

### 1. Prevailing Party Requirement

Mr. Kossov claims that he is a prevailing party because he received a significant part of the relief he sought.  The Court finds that recent Supreme Court precedent contradicts Mr Kossov's position.  Until recently, the Circuit Courts were split on the definition of a prevailing party for purposes of fee-shifting

4

statutes.  *Buckhannon Board & Care Home, Inc. v. West Virginia*
*Dept. of Health & Human Resources*, 532 U.S. 598, 602-603
(2001)(*discussing Circuit split*).  Last year, the Supreme Court
resolved this disagreement between the Circuits in *Buckhannon*: "a
Plaintiff [must] receive at least some relief on the merits of
his claim before he can be said to prevail." *Id.* at 603-604.

The Supreme Court explained that, to be considered a
prevailing party, a plaintiff must have a judgment from the court
or a judicially enforceable agreement.  *Id.*  Subsequent to the
Supreme Court's ruling in Buckhannon, courts have determined that
not even partial settlement agreements and preliminary
injunctions are sufficient to confer prevailing party status.
*See Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002).  Rather, a
"material alteration of the legal relationship of the parties" is
necessary before the court can award attorney's fees and costs.
*Buckhannon*, 532 U.S. at 604 (*citing Texas State Teachers Assn. v.*
*Garland Independent School Dist.*, 489 U.S. 782, 792-793 (1989)).

Mr. Kossov never received a judgment in this case, because
Judge Aspen dismissed the mandamus action as moot.  Nor did the
INS enter into a consent decree agreeing to provide Mr. Kossov
with a green card.  *See Roberson v. Giuliani*, No. 99 CIV 10900
DLC, 2002 WL 253950 (S.D.N.Y. Feb. 21, 2002)(noting that, unlike
a consent decree, a private settlement agreement does not
generally carry the judicial review and oversight necessary to

5

confer prevailing party status.) The INS claims that the card was issued in the manner that the INS Examinations Branch and the Service Center had determined. Further, the INS claims that it had already begun processing the green card when the mandamus action was filed. The Court does not need to determine how or when the INS processed Mr. Kossov's green card because, under *Buckhannon*, such an inquiry is irrelevant. The controlling fact is that the INS issued the card voluntarily, without direct judicial involvement forcing a change in the legal relationship of the parties. Therefore, Mr. Kossov can not be considered the prevailing party.

## 2. Applicability of *Buckhannon* to the EAJA

Mr. Kossov insists that he is the prevailing party because the lawsuit he filed acted as a catalyst for the INS' action. It is undisputed that Mr. Kossov waited three years for his green card, only to receive it less than two weeks prior to the scheduled hearing date for the mandamus action. But even assuming that Mr. Kossov's suit prompted the INS to act, the "catalyst theory" does not entitle Mr. Kossov to the prevailing party status he requires in order to recover attorney's fees and costs. *Sileikis v. Perryman*, No. 01 C 944, 2001 WL 965503 (N.D. Ill. Aug. 21, 2001)(applying *Buckhannon's* holding to EAJA actions).

The Supreme Court has held that the catalyst theory alone is not enough for a plaintiff to be a prevailing party.

> A defendant's voluntary change of conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration of the legal relationship of the parties.

*Buckhannon*, 532 U.S. at 605.

Mr. Kossov counters that the *Buckhannon* holding does not apply to the EAJA because the Supreme Court did not specifically analyze the EAJA fee shifting provisions, 28 U.S.C. § 2412(d)(1)(A). Rather, Mr. Kossov argues, the *Buckhannon* Court interpreted the attorney's fees provisions under the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3613(c)(2) and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12205.

Mr. Kossov boldly argues that "[c]ontrary to what the Supreme Court has suggested, not all fee shifting statutes are equal or identical." *Pl.'s Reply, Pet. For Fees* at 7. Mr. Kossov argues that the statutes in *Buckhannon* are civil rights statutes, modeled after 42 U.S.C. § 1988, while the EAJA's purpose is to protect individuals from the powerful resources and unreasonable conduct of the government. *Meyers v. Heckler*, 619 F. Supp. 1289, 1295 (D. Me. 1985). Given this distinction, Mr. Kossov argues, courts should apply a more liberal standard in awarding fees

under the EAJA and should permit individuals to recover fees if their lawsuit was a catalyst to achieving the Government's appropriate response.

The Court is not inclined to reject the Supreme Courts' "suggestion" that the fee shifting provisions of the ADA and FHAA are substantially similar to other federal fee shifting statutes, including the EAJA.  *Buckhannon*, 532 U.S. at 603 (noting the similarities between the various federal fee shifting statutes and citing *Marek v. Chesny*, 473 U.S. 1, 43-51 (1985)(listing the EAJA, and other federal fee-shifting statutes.))  Although the *Buckhannon* ruling is fairly recent, there are several cases that have extended its holding to the EAJA.  *Sileikis v. Perryman*, No. 01 C 944, 2001 WL 965503 (N.D. Ill. Aug. 21, 2001); *Alcocer v. INS*, No. 300 CV 2015-H, 2001 WL 1142807 (N.D. TX Sept. 21, 2001).

The *Sileikis* case is strikingly similar to this action.  In *Sileikis*, the plaintiff brought a claim for attorney's fees pursuant to the EAJA against the INS where the relief he sought was given without the court's intervention.  *Id.*  The court in *Sileikis* specifically held that *Buckhannon* was the controlling law, and that its rationale applied equally to the EAJA.  *Id* at *2 (denying plaintiff's claim for fees)

The *Sileikis* court found that the Supreme Court's rationale for rejecting the catalyst theory in *Buckhannon* was also applicable to petitions filed under the EAJA.  As the *Sileikis*

8

court noted, the Supreme Court was concerned that an agency would be deterred from acting in the best interest of the claimant through fear of liability for attorney's fees. *Id* at *3.

The Supreme Court also noted that analysis of catalyst theory claims places too great a burden on the court. In *Buckhannon*, the Court stated that "[a] request for attorney's fees should not result in a second major litigation." *Buckhannon*, 532 U.S. at 609 *(citing Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983)). The Supreme Court feared that a lengthy inquiry into the agency's subjective motivation would be required in these cases. *Buckhannon,* at 609-610. Without a lengthy inquiry, the Court would be forced to speculate on the reason for the Agency's actions. *Sileikis*, 2001 WL 965503 at *3.

This Court agrees with the rationale in *Sileikis*, and finds that Mr. Kossov cannot achieve prevailing party status under the catalyst theory. The concerns raised by the *Buckhannon* Court in rejecting the catalyst theory are equally compelling under the EAJA. Permitting Mr. Kossov to recover fees under the catalyst theory could have a chilling effect on the Government's responsiveness. Faced with the prospect of paying attorneys' fees, the INS might have decided to take its chances at the hearing before Judge Aspen, rather than issue Mr. Kossov's green card. In addition, evaluation of Mr. Kossov's claim under the catalyst theory would require the Court to undertake the same

involved scrutiny into the INS' subjective motivations that the Supreme Court cautioned against; an evaluation of a fee petition should not result in secondary litigation.

Moreover, the *Buckhannon* Court "strongly insisted a court respect ordinary language in its interpretation of the term 'prevailing party.'" *Alcocer,* 2001 WL 1142807, at *3. It is undisputed that the Court did not grant any relief in Mr. Kossov's lawsuit that altered the legal relationship between the parties. Therefore, the Court is of the opinion that, under the plain language of the EAJA, Mr. Kossov is not a prevailing party, and he is not entitled to the fees and costs he seeks.

## 3. Mr. Kossov Waived His Common Fund and Common Benefit Arguments.

Finally, Mr. Kossov argues that he is entitled to attorney's fees under the common fund and common benefit theories. However, he raised this argument for the first time in his reply brief. Therefore, the argument is waived. *Mason v. Southern Illinois University at Carbondale,* 233 F.3d 1036, 1043 (7th Cir. 2000) (by denying the opposing party the opportunity to respond, the movant waives his opportunity to have his argument considered by the court.)

## CONCLUSION

Mr. Kossov is convinced that, absent his filing a lawsuit, he may have waited another three years for the INS to issue his

10

green card.  The Court is not unsympathetic to Mr. Kossov's plight and understands the benefits conferred by possession of a green card.  And while Mr. Kossov is certainly entitled to his green card, the Court notes that he managed to establish an existence in this country - though illegally - for years before his wife was selected in the INS lottery.  In the end, just as Mr. Kossov is bound by the rules and idiosyncracies of an overburdened federal agency, processing thousands of immigration applications, he is also bound by the United States' Supreme Court's rulings.

For the reasons set forth above, the Court is of the opinion that Mr. Kossov was not a prevailing party within the meaning of the EAJA.  Therefore, the Court recommends that the District Court dismiss Mr. Kossov's Petition for Fees and Costs under the EAJA.


DATED: April 30, 2002          RESPECTFULLY SUBMITTED:



_____
ARLANDER KEYS
United States Magistrate Judge


Counsel have ten days from the date of service to file objections to this Report with the Honorable Marvin E. Aspen  *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1).  Failure to object constitutes a waiver of the right to appeal.  *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).